(No. 40290.—

Robert E. Dickeson, Appellee, *vs.* Baltimore & Ohio Chicago Terminal RR. Co. *et al.,* Appellants.

*Opinion filed January 29, 1969.—Rehearing denied March 25, 1969.*

John H. Gobel, N. E. Liontakis, and Roger L. Galassini, all of Chicago, for appellants.

Philip H. Corboy, and James P. Chapman, both of Chicago, for appellee.

T. G. Schuster, James P. Reedy, John J. Schmidt, Robert S. Kirby, Robert W. Russell, and Richard F. Koproske, all of Chicago, for *amici curiae*.

Mr. Justice Kluczynski delivered the opinion of the court:

Plaintiff, Robert E. Dickeson, brought suit in the circuit court of Cook County against defendants, Baltimore and Ohio Chicago Terminal RR. Co. (Baltimore and Ohio), the Pittsburgh, Cincinnati, Chicago and St. Louis Railroad Company (Pittsburgh), and the Pennsylvania Railroad Company (Pennsylvania), to recover damages for personal injuries suffered in an accident involving one of Baltimore and Ohio's trains. The jury returned a verdict against all three defendants in the amount of $116,480, judgment was entered thereon and defendants appealed to the Appellate Court, First Judicial District. That court affirmed the judgment (73 Ill. App. 2d 5) and we granted leave to appeal.

Most of the facts are not in dispute and are covered in detail by the appellate court opinion. Only those facts relevant to disposition of the issues presented here need be discussed.

The situs of the accident was a railroad embankment, or elevated right of way, located in a densely populated area of Chicago, Illinois. On January 21, 1953, plaintiff, age 14, and his younger brother climbed up the embankment, using a well-worn path, and stood by the easternmost of the five tracks while a slowly moving Baltimore and Ohio train approached from the north. The boys waved to the engineer and he waved back. As the train passed, plaintiff grabbed onto the side of a freight car by means of a ladder affixed thereto and began to climb up the rungs to the top. As he was climbing, gazing upward, the train entered the Jackson Boulevard overpass and plaintiff was brushed off the side of the car by a bridge girder, sustaining serious injuries.

The Pittsburgh railroad company was the owner of the

right of way on which plaintiff was injured; the Pennsylvania was the lessee of that right of way, and the Baltimore and Ohio used the right of way by agreement with the Pittsburgh.

In his complaint, plaintiff advanced essentially two theories to sustain a finding of liability. He sought recovery from all defendants on the basis of the Baltimore and Ohio's common-law negligence, charging *inter alia* that it operated its train without due regard to his safety in that it knew or should have known that children such as himself constantly played in the area and were in the habit of boarding trains. Under the applicable Illinois law, the Pittsburgh and Pennsylvania railroads, as owner and lessee of the right-of-way, would be vicariously liable for the negligence of the Baltimore and Ohio. *Armstrong* v. *Chicago and Western Indiana Railroad Co.*, 350 Ill. 426; *American National Bank and Trust Co.* v. *Pennsylvania Railroad Co.*, 35 Ill.2d 145, 152.

Plaintiff also proceeded against the Pittsburgh and Pennsylvania railroads on an independent basis, asserting that under the principles enunciated in *Kahn* v. *James Burton Co.*, 5 Ill.2d 614,. 625, they were liable for failing to maintain their premises in such a manner to protect children from injury. On the trial of the case, the jury was instructed that liability on this ground was limited to the Pittsburgh and Pennsylvania and they were given a form of verdict which reflected this fact. The other forms of verdict submitted enabled the jury to find for, or against, all defendants.

The chief defense at trial involved plaintiff's alleged contributory negligence; however, the Baltimore and Ohio also moved for a directed verdict on the theory that it owed plaintiff only a duty to refrain from wilful and wanton conduct, and that such conduct was not charged nor established by the evidence presented. The court denied this motion and also refused defendants' tendered instruction re-

citing the wilful and wanton standard. Defendants contend these rulings were erroneous, citing the following language in *Briney* v. *Illinois Central Railroad Co.*, 401 Ill. 181, 186: "An owner of premises owes to an invitee thereon a duty to exercise ordinary care not to injure him [citation] but to a trespasser the owner owes only the duty not to wilfully and wantonly injure him and to use ordinary care to avoid injury to him after his presence on the premises in a place of danger has been discovered." It is argued that plaintiff was in a place of safety, not danger, when his presence was discovered by the operating railroad's engineer and that therefore no duty of ordinary care was owed. Contrariwise, plaintiff asserts he was in a place of danger since defendants, from facts which they knew or should have known, could reasonably anticipate that he would attempt to board the train.

On this issue, the uncontradicted evidence showed that children customarily played on the tracks, often "flipping" rides on slow moving freight trains, and that defendants had, or were chargeable with, knowledge of these practices. For example, records subpoenaed from the Pennsylvania's files disclosed that four other children within three years preceding this accident had been injured by moving trains on this same stretch of track. In light of this evidence, the question of whether plaintiff was in a place of danger was a factual matter for the jury's determination. We hold the trial court's refusal to direct a verdict and to give the tendered instruction was proper.

We are satisfied that there was sufficient evidence in the record from which the jury could find that the Baltimore and Ohio negligently operated its train (see *American National Bank and Trust Co.* v. *Pennsylvania Railroad Co.*, 52 Ill. App. 2d 406, aff'd 35 Ill.2d 145) and defendants, apart from their challenge to the extent of the duty owed, do not contest the evidence on this point. Rather, they argue that in "flipping" the train, plaintiff was guilty of contribu-

tory negligence as a matter of law, relying upon *Maskaliunas* v. *Chicago and Western Indiana Railroad Co.*, 318 Ill. 142. In that case, it was stated "that a child under seven years of age is conclusively presumed incapable of contributory negligence, and that in the case of a child above the age of fourteen years the same rule shall be applied to him in that regard as is applied to adults, his intelligence and experience being considered. The law is clearly established by great weight of authority, that between the ages of seven and fourteen the question of culpability of the child is an open question of fact and must be left to the jury to determine, taking into consideration the age, capacity, intelligence and experience of the child." (318 Ill. at 149, 150.) Since plaintiff was 14 years and 4 days old at the time of the accident, it is claimed that he must be held to an adult standard and case authority is given to establish that adults who "flip" or climb aboard moving trains are contributorily negligent as a matter of law.

The *Maskaliunas* case permits a directed verdict to be entered against a child above the age of 14 on the issue of his contributory negligence; but it does not permit the contributory negligence of such a child to be measured by the identical standard as applied to an adult. As clearly stated in the above quoted matter, a minor over 14 years of age is entitled to have "his intelligence and experience" considered in determining this issue. As it is self-evidence that a 14-year-old boy's intelligence and experience could differ substantially from an adult's, the cited authorities holding adults guilty of contributory negligence as a matter of law for "flipping" trains are not controlling here. Rather, a factual review must be made to determine whether this issue was properly submitted to the jury.

It was undisputed that plaintiff, who had recently moved to Chicago from Drakesboro, Kentucky, had never ridden a railroad train in his life nor had he ever attempted to "flip" a ride prior to the date of the accident. Though his

physical health was excellent, except for a cross-eyed condition, he had failed one year of school in Kentucky, and in Chicago was placed behind his age group in school. A psychologist, George Speer, who examined plaintiff shortly before trial, testified that he had an I.Q. of 81, which classified him as "dull-normal", "less than average intelligence". His conclusions were based on the results of three tests, described as objective and recognized in the profession. In his opinion, plaintiff had done the best he could on the tests. Cross-examination developed the possibility of intentionally doing poorly on the tests and the lack of scientific accurateness to the results. Under these facts and circumstances, the question of plaintiff's contributory negligence was one for the jury's determination. As it was properly instructed on this issue, its finding that plaintiff was free from contributory negligence must stand.

Defendants urge that the admission of the psychologist's testimony was reversible error. It is charged that this testimony was based on the results of subjective tests and should therefore have been excluded under the rule set forth in *Jensen* v. *Elgin Joliet and Eastern Railway Co.*, 24 Ill.2d 383. That case held that "Evidence of statements and physical demonstration capable of simulation are not admissible, however, if made to a physician examining for the purpose of testifying, and he is limited to testifying to purely objective conditions." (24 Ill.2d at 388.) Even assuming that this rule applied with equal force to the testimony of an examining psychologist, under the circumstances of this case we find that no prejudicial error was committed by the admission of Speer's testimony. It was his opinion that the tests administered were objective and operated as a cross-check on the good faith of the test-taker. As such, the alleged inadequacies of the tests were matters properly affecting the weight to be given the testimony but not its admissibility. (See *Hidden* v. *Mutual Life Ins. Co.*, 217 F.2d 818.) Furthermore, we note that there was independ-

ent evidence indicating that plaintiff was of less than average intelligence.

Defendants' other assignments of error relating to the admission of certain exhibits and the restriction of cross-examination were considered and properly disposed of by the appellate court. The sole contention remaining involves the applicability of the attractive nuisance principles set forth in *Kahn* v. *James Burton,* 5 Ill.2d 614. The Pittsburgh and Pennsylvania argue that these principles do not apply to moving trains and that, in any event, the jury was not instructed in accordance with the requirements of the *Kahn* case. These questions are important but need not be decided in this instance because the liability of the Baltimore and Ohio, for which the Pittsburgh and Pennsylvania are vicariously liable, was not based on the attractive nuisance doctrine. See *American National Bank and Trust Co.* v. *Pennsylvania Railroad Co.,* 35 Ill.2d at 153, 154.)

The judgment of the Appellate Court, First District, is affirmed.

*Judgment affirmed.*