E. T. MARTIN, Appellee, *vs.* S. H. HELMS *et al.*
Appellants.

*Opinion filed December 16, 1925.*

1. WILLS—*joint and mutual will, properly executed, is valid.* A
husband and wife, or other parties, may by joint, mutual and recip-
rocal will devise their respective properties to each other, and the
will, if properly executed, will be given effect at the death of either,
so far as the property of that one is concerned.

2. SAME—*joint and mutual will, to be valid as to either party,
must be properly executed by both.* Joint, mutual and reciprocal
wills are made pursuant to an agreement and understanding of the
parties thereto and must take effect as to both parties or neither,
and where a husband and wife attempt to execute such a will but
the wife's signature is not properly attested, upon the death of the
husband the will cannot be probated as a valid will of the husband,
as the instrument must be valid as to both or neither.

APPEAL from the Circuit Court of McDonough county;
the Hon. GEORGE C. HILLYER, Judge, presiding.

GEORGE V. HELFRICH, and SWITZER & SWITZER, for
appellants.

L. B. VOSE, and GUMBART & GRIGSBY, for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

This appeal is prosecuted from a judgment of the cir-
cuit court of McDonough county admitting the will of Har-
vey A. Helms to probate. The testator died March 3, 1925,
leaving a widow, Alta May Helms, but no children or de-
scendants of a child. He left surviving several brothers
and sisters. Notice was given of the application to admit
the will of the deceased to probate. The hearing was had
in the county court and that court admitted the will to pro-
bate. The brothers and sisters of deceased appealed to the
circuit court, and that court affirmed the judgment of the
county court and ordered that the will be admitted to pro-

bate by the county court. From that judgment the brothers and sisters of the deceased have prosecuted this appeal.

The will purports to be the joint and mutual will of Harvey A. Helms and Alta May Helms, his wife, and is dated December 29, 1924. It is signed by Harvey and Alta May Helms, and by Clint Wilson and Reon D. Hicks, witnesses. The preamble recites that "we, Harvey A. Helms and Alta May Helms," do make and declare the instrument as their last will and testament. The first clause reads, "We and each of us" direct the payment of "our" debts and funeral expenses. By the second clause Helms devises and bequeaths to his wife all the property, real and personal, he dies possessed of, to be hers in fee simple. By the third clause Mrs. Helms devises and bequeaths to Helms all the property she dies possessed of, both real and personal, to be his in fee simple. The fourth clause names E. T. Martin as executor and revokes all former wills made by them. The attesting clause recites they have subscribed the instrument, denominating it "our joint and mutual will." The will was prepared by the man named as executor, at his bank in Blandinsville. Mrs. Helms was not present. The will was read over to Helms by Martin, and Helms signed it. At his request Wilson signed it as a witness. Helms left the bank to return home, and requested Wilson, who was a neighbor, to come to his house the next morning. Wilson did so, and there, besides Mr. and Mrs. Helms, he met Reon D. Hicks. Helms produced the will, and Hicks, who was present at Helms' request, was going to sign it, when Helms suggested that Mrs. Helms sign it first. She signed the will and then Hicks signed it. Wilson did not again sign the paper.

The principal objection to the probate of the will is that it purports to be a joint and mutual will but was not executed by Mrs. Helms in the manner required by statute. Her signature was not witnessed by Wilson after she signed it. The instrument could not be probated as Mrs. Helms'

will at her death, and the contention is that if it was not
a valid will of Mrs. Helms it could not be valid as to her
husband and the court erred in admitting it to probate as
the will of Harvey A. Helms.

Joint, mutual and reciprocal wills were originally re-
garded with disfavor but are now generally sustained by
the courts of England and this country. Such wills have re-
ceived the consideration of this court. In *Gerbrich* v. *Frei-
tag,* 213 Ill. 552, a husband and wife, each owning land,
made a joint, mutual and reciprocal will, each devising to
the survivor the beneficial use for life of the lands of the
one dying first. The validity of the will was questioned,
and this court held a husband and wife may by joint, mu-
tual and reciprocal will devise their respective property to
each other, and the will will be given effect at the death of
either so far as the property of that one is concerned.

In *Peoria Humane Society* v. *McMurtrie,* 229 Ill. 519,
a mother, Mary Rouse, and her son, Harry, each being the
owner of property, made a joint and mutual will giving the
survivor all the property of the other, and when both died,
if no individual will had been made, the property of both
should be treated as one and be disposed of as thereinafter
provided. The son married after the will was made and died
leaving a widow. He made a will after his marriage. His
will was admitted to probate, its provisions were executed
and his estate settled. Subsequently the mother died, and
application was made to admit to probate the will made by
her and her son. Probate was denied and appeal taken to
this court. This court said: "A joint, mutual or reciprocal
will, like any other, is ambulatory during the lives of the
makers, and it may be revoked by either at any time before
his death. The right of revocation cannot be doubted,—
at least as to either maker who has taken no benefit or ad-
vantage under the will. And that was the case here. So
far as the instrument was the will of Harry G. Rouse it
was revoked by his subsequent marriage, and he also made

an individual will, which could have operated as a revocation. The instrument ceased to be his will, and the question to be solved is whether it is now the will of the other maker." Referring to the disposition of the property at the death of both the court said: "It is clear that the makers intended that the portion of the will in question should take effect as the will of both or neither, and it was to be operative as a will on condition that neither of the makers should otherwise dispose of his or her property by an individual will."

The question of the disposition of property by a joint, mutual or reciprocal will was again considered by this court in *Frazier* v. *Patterson*, 243 Ill. 80. In that case a husband and wife each owned land. They made a joint will, each devising to the survivor a life estate in the land of the other, and at the death of the survivor to a daughter and only child for her life and then to her issue. The husband died first and the will was duly probated, and the widow took possession of the land and enjoyed the rents and profits until her death, some twenty years after her husband's death. The daughter died prior to her mother's death, leaving children surviving her. The widow then executed a will by which she attempted to revoke the joint and mutual will and make a different disposition of her property. This court said the single issue was whether the joint will on its face proved a compact or agreement to make a will mutually disposing of their property, each for and in consideration of the will of the other. Upon that question the court said: "A will that is both joint and mutual is one executed jointly by two or more persons, the provisions of which are reciprocal, and which shows on its face that the devises are made one in consideration of the other. * * * Mutual wills,—that is, where two persons execute wills reciprocal in their provisions but separate instruments,—may or may not be revocable at the pleasure of either party, according to the circumstances and under-

standing upon which they were executed. To deprive either party of the right to revoke such mutual will it is necessary to prove, by clear and satisfactory evidence, that such wills were executed in pursuance of a contract or a compact between the parties and that each is the consideration for the other; and even in cases where mutual wills have been executed in pursuance to a compact or agreement between the parties, the law appears to be well settled that either party may, during the lifetime of both, withdraw from the compact and revoke the will as to him. A joint and mutual will is revocable during the joint lives by either party, so far as relates to his own disposition, upon giving notice to the other, but it becomes irrevocable after the death of one of them if the survivor takes advantage of the provisions made by the other. * * * If two persons make wills, each devising his property to the other, there is no necessary inference that the wills were the result of any mutual or reciprocal agreement or understanding. Such wills might be executed without either party knowing that the other had executed his will; but where the parties execute their wills by the same instrument, it is not possible that such course could be adopted without some previous understanding or agreement between them. Each would necessarily know what disposition the other had made of his property. This inference is especially strong where the parties are husband and wife and where they have a common interest in the welfare of the devisees. In the case at bar the parties had one daughter. They had a mutual interest in her. They desired that she should have the enjoyment of their real estate during her life and at her death her children should take it in fee. If evidence of a mutual compact is necessary in such case, that evidence is afforded by what the parties did. We cannot see how the situation would be any different if witnesses had testified that they heard this husband and wife discuss what disposition they would make of their respective estates, and that they agreed

with each other that they would make a joint will such as they did make. The fact that they made such will is satisfactory proof to our minds that it was done in accordance with their mutual compact to dispose of their property in this manner."

The important question presented in this case is whether the fact that Mrs. Helms' signature to the will was not attested by two witnesses, as required by statute, rendered the instrument invalid as the will of her husband. It will be remembered that Wilson and Hicks witnessed the signature of Helms, but Hicks only witnessed the signature of Mrs. Helms. She clearly did not properly execute the will, and if she had died first it could not have been probated as her will. If it was invalid as to her, could it be a valid will of her husband? The precise question has not been decided so far as the briefs show or our own investigation discloses.

Joint, mutual or reciprocal wills are regarded as made pursuant to a compact or agreement, and it appears that many courts hold they may be revoked by one of the parties during the life of both, but the contract cannot be revoked and may be enforced at law or in equity. (Page on Wills, sec. 69; Thompson on Wills, sec. 470; Schouler on Wills, sec. 458a.) Whether the cases so holding are regarded as sound or not, they are not very helpful in solving the question here presented. Revocation of a joint and mutual will assumes such a will had been executed, but here no such will was executed. In effect the will here shows Helms and wife entered into an agreement that they would jointly execute a will giving to the survivor all the property of each of them. The husband performed his part of the agreement by executing the will but the wife never did. This court said in *Frazier* v. *Patterson, supra,* that when a husband and wife execute a joint and mutual will it is not possible that it would have been done without an understanding and agreement between them. In *Peoria*

*Humane Society* v. *McMurtrie, supra,* the court said it was clear Mrs. Rouse and her son intended the will should take effect as to both or neither. In that case the joint and mutual will was subject to the right to make an individual will. Neither of those cases involved the direct question here presented, but they recognize that joint, mutual and reciprocal wills are made pursuant to an agreement and understanding and must take effect as to both parties or neither. The will here involved could not take effect as to Mrs. Helms. If she had died first the instrument could not have been admitted to probate as her will, because it had not been executed in compliance with the statute. Her husband executed the will in consideration of her promise to execute it. She failed to keep her promise, and so the consideration of the husband's execution of the will failed. Can the instrument be a valid will disposing of the husband's estate to his wife when the consideration for making it—his wife's promise to devise to him her estate if he survived her— has wholly failed? Under the peculiar circumstances of this case we think the instrument had to be valid as to both or it was invalid as to both. It purported to be a joint, mutual and reciprocal will of both, for the benefit of the survivor. It was, in fact, the will of the husband, only. It could not be doubted that if the wife had by fraud induced her husband to execute the will but deceived him by not executing it herself it would not be his will. Here there was no actual fraud and no such charge can be made, but the result is the same as if a fraud had been perpetrated by Mrs. Helms. It was the intention of the parties that the instrument should be effective as the will of both and give to the survivor the estate of the one dying first. This intention and agreement were not carried out and it never became the will of either.

The circuit court erred in admitting the instrument to probate as the will of Harvey A. Helms, and the judgment is reversed.                         *Judgment reversed.*