JEAN C. PROCTOR *et al.*, Plaintiffs-Appellants, *v.* MIRIAM HANDKE, Defendant-Appellee.

Second District No. 82—791

Opinion filed August 2, 1983.

Roy I. Peregrine and Dale W. Bruckner, both of Peregrine, Stime, Newman & Ritzman, of Wheaton, for appellants.

John C. Ambrose, of Ambrose & Cushing, of Chicago, for appellee.

JUSTICE REINHARD delivered the opinion of the court:

Plaintiffs, Jean C. Proctor and Robert O. Handke, appeal from a finding for defendant, Miriam Handke, at the close of plaintiffs' evidence in a bench trial, and a prior order requiring them to pay defendant $450 in costs for requesting and obtaining a continuance on the scheduled day of trial.

The issues presented for review are: (1) whether mutual wills executed on March 26, 1972, by defendant and her deceased husband, Otto Handke, father of the plaintiffs, constituted a binding contract between the testators to dispose of the survivor's property which could not be revoked after the death of Otto Handke; and (2) whether the trial court properly awarded defendant $450 in costs for granting a continuance requested by plaintiffs when plaintiffs were later willing to have judgment rendered against them based upon the proofs previously submitted on their motion for summary judgment which had been denied.

In their second amended complaint plaintiffs alleged, *inter alia,* that they were children of Otto Handke and Catherine Handke; that after Catherine Handke's death, Otto Handke married defendant on October 24, 1959; that on March 26, 1972, Otto Handke prepared mutual and reciprocal wills for himself and defendant which were typed by defendant and executed by them on that date in front of each other and before the same witnesses; that each had full knowledge of both wills; that defendant had one child by a previous marriage and one child which was born during the marriage of Otto Handke and defendant; that the mutual and reciprocal wills provided for a common pooling of their assets and provided for equal treatment of the plaintiffs, the child born to defendant during her prior marriage, and the child born to Otto Handke and defendant; that Otto Handke died

on December 10, 1977, without revoking his March 26, 1972, will; that upon Otto Handke's death the will which defendant had also executed on March 26, 1972, became irrevocable; and that subsequent to Otto Handke's death defendant executed codicils, wills, or other testamentary documents which had the effect of revoking or modifying the terms of defendant's will of March 26, 1972. The complaint sought to have any codicil, will, or other testamentary instrument of defendant executed after Otto Handke's death declared null and void; to have defendant enjoined from revoking or modifying her will dated March 26, 1972; and other relief.

The wills of Otto Handke and defendant are substantially identical in terms. Each leaves all the testator's property to the survivor, and in the event the testator is the survivor, in equal shares to the four children/stepchildren, by name, who may have survived the first of the testators to die, without reference to whether they survive the survivor of the testators. Should one of the children/stepchildren have failed to survive the first of the testators to die, his or her share was given to his or her spouse, by name, except in the case of Janet (a 10-year-old in 1972 and the child of Otto Handke and defendant) whose share was in that event directed to go to the other three. As to the plaintiffs herein, if one of them and his or her spouse should both predecease the first of the testators to die, his or her share would be given to his or her children. The wills do not explicitly provide for the disposition of the share of Miriam's son Gary Brown in the event both he and his wife should predecease the first of the testators to die. Both wills appointed the other testator to be executor and, if the other failed to survive, appointed Edward O. Proctor, Jr., husband of Otto's daughter, Jean, as successor executor.

Plaintiffs moved for summary judgment and filed subsequently the affidavit of Robert O. Handke which stated, *inter alia*, that throughout Otto Handke's life he and his children, plaintiffs, were on the best of terms having a close relationship of love and respect; that the reciprocal wills were executed on March 26, 1972; and that during their married life Otto Handke and defendant had pooled their assets and held them jointly and that Otto's principal asset, a business block on Lake Street in River Forest, Illinois, was held in trust which was amended on March 20, 1972, to substantially conform, as far as its testamentary provisions are concerned, with the wills executed on March 26, 1972. Summary judgment was denied and the matter set for trial on October 29, 1981.

On October 29, 1981, plaintiffs filed a motion pursuant to Supreme Court Rule 308 (87 Ill. 2d R. 308) for interlocutory appeal by

permission from the denial of their motion for summary judgment. The motion was denied, but plaintiffs were not prepared to proceed to trial and requested a continuance. The trial court granted the continuance contingent upon payment of $450 by plaintiffs as attorney fees for defendant's counsel's preparation for trial. Thereafter, on November 20, 1981, plaintiffs filed a motion for entry of judgment requesting that the trial court enter judgment for defendant on the basis of the affidavit of Robert O. Handke filed in support of plaintiffs' motion for summary judgment. On that same day, the court entered judgment for defendant on the motion of plaintiffs. However, defendant who was not present although given notice of the motion, later filed a motion to vacate the judgment, which was granted on May 10, 1982.

A bench trial was held on August 25, 1982, in which plaintiff Robert O. Handke, and defendant, called under section 2—1102 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—1102), formerly section 60 of the Civil Practice Act (Ill. Rev. Stat. 1981, ch. 110, par. 60), testified during the plaintiffs' case. In addition to the facts alleged in the amended complaint and the statements in Robert O. Handke's affidavit, which were testified to in more detail by Handke, no additional testimony by him need be detailed herein for purposes of the issues raised on appeal. Defendant, under section 2—1102 testimony, stated she had no discussion with Otto Handke about not being able to cancel or revoke her will or his will of March 26, 1972. She also denied ever discussing the significance of the March 20, 1972, amendment to the trust agreement in relationship to the wills. She confirmed that she had full knowledge of the content of both wills prior to their execution.

At the conclusion of the plaintiffs' case, the trial court granted defendant's motion for a finding in defendant's favor.

Plaintiffs contend that the wills of March 26, 1972, drafted by Otto, typed by Miriam, and reciprocal in their terms as between them and their respective families, constituted a binding contract between the testators to dispose of the survivor's property in accordance with the terms of the wills and under this contract Miriam could not revoke her will after Otto's death. Plaintiffs advance two arguments to support their position, namely that: (1) the presumption that joint and mutual wills constitute a contract applies with equal force to the separate and mutual wills here, and (2) the provisions of the wills and circumstances of the testators and their families confirm the presumption that they established a contract binding the survivor by (a) the express language of the wills, (b) the testators' family situation, and (c) other circumstances of the testators at the time of the execution of

the wills.

■ The terms "joint wills" and "mutual wills" are defined in *Curry v. Cotton* (1934), 356 Ill. 538, 543, 191 N.E. 307, as follows:

"A joint will is a written instrument executed and published by two or more persons disposing of the property, or some part of the property, owned jointly or in common by them or in severalty by them. On the death of the testator first dying it is subject to record and probate as his will, and on the death of the surviving testator it is subject to probate as his will. A joint will may or may not be mutual or reciprocal. Mutual or reciprocal wills are the separate instruments of two or more persons, the terms of such wills being reciprocal and by which each testator makes testamentary disposition in favor of the other. (30 Am. & Eng. Ency. of Law, 556.) A will that is both joint and reciprocal is an instrument executed jointly by two or more persons with reciprocal provisions and shows on its face that the bequests are made one in consideration of the other. (*Frazier v. Patterson,* 243 Ill. 80, 28 R.C.L. 167.)"

A joint will of a husband and wife with reciprocal provisions is presumed to be executed pursuant to a contract and therefore irrevocable upon the death of one of the testators. (*In re Estate of Edwards* (1954), 3 Ill. 2d 116, 120, 120 N.E.2d 10; *Frazier v. Patterson* (1909), 243 Ill. 80, 86, 90 N.E. 216.) "Due to the relationship of mutual trust and confidence imposed by such status [husband and wife], it may be presumed that the provisions are induced by the mutual love, respect for, and faith which, the parties have in each other. The consideration thus arising from the relationship, and the fact of the joint execution of the instrument, gives rise to the presumption of a contract or agreement between the parties, husband and wife." (*Peck v. Drennan* (1951), 411 Ill. 31, 37, 103 N.E.2d 63; see also *Helms v. Darmstatter* (1966), 34 Ill. 2d 295, 300-01, 215 N.E.2d 245; *Jusko v. Grigas* (1962), 26 Ill. 2d 92, 97, 186 N.E.2d 34.) There is authority, however, which appears even reluctant to permit the presumption to be sufficient in itself but requires a search of the terminology of the will for an expression of intention on the part of the testators to stand in the stead of supporting external proof. See *In re Estate of Edwards* (1954), 3 Ill. 2d 116, 121, 120 N.E.2d 10.

■ Mutual wills, however, are not, generally, of themselves sufficient evidence of a contract, and the consideration to support it must be *aliunde* the wills. (*Monninger v. Koob* (1950), 405 Ill. 417, 422, 91 N.E.2d 411; *Frese v. Meyer* (1945), 392 Ill. 59, 64, 63 N.E.2d 768.) The mere existence of mutual wills does not lead to a presump-

tion of contract nor is it evidence that such a contract does, in fact, exist. (*Campbell v. Cowden* (1974), 18 Ill. App. 3d 500, 503, 309 N.E.2d 601.) The cases involving wills which are merely mutual or reciprocal in their provisions, but are not joint, generally require clear and convincing evidence that they were executed as the result of a binding contract to be irrevocable. (*In re Estate of Edwards* (1954), 3 Ill. 2d 116, 122, 120 N.E.2d 10.) These rules are applicable even where the separate, reciprocal wills are executed on the same day. (See, *e.g., Jordan v. McGrew* (1948), 400 Ill. 275, 79 N.E.2d 622; *Campbell v. Cowden* (1974), 18 Ill. App. 3d 500, 309 N.E.2d 601.) Thus, the cases clearly reject application of the presumption of irrevocability accorded a joint and reciprocal will to separate mutual wills. In view of this well-established authority, we find no merit to plaintiffs' contention that such a presumption should apply equally to the separate and mutual wills under the circumstances presented here where testators were husband and wife and they knew the contents of each other's will.

■ Nor do we conclude that the provisions of the wills or the circumstances of the testators and their respective families establish a binding contract. The existence of a binding contract between the testators here is not specifically expressed in the wills as it was in other cases in which mutual, but not joint, wills have been construed as an irrevocable contract. (See, *e.g., In re Estate of Kritsch* (1978), 65 Ill. App. 3d 404, 382 N.E.2d 50; *Freese v. Freese* (1977), 49 Ill. App. 3d 1041, 364 N.E.2d 983.) The wills contain no reference to each other, nor do they contain any language from which a contract may be inferred. (See *Monninger v. Koob* (1950), 405 Ill. 417, 424, 91 N.E.2d 411.) While the mutual wills here both provide that all children of both families would benefit equally from the property of the testators upon both their deaths and contain a provision that made each child's share contingent only on surviving the testator's predeceased spouse, these facts are insufficient to provide clear and convincing evidence of an agreement between Miriam and Otto to make an irrevocable contract.

No other evidence was adduced at the hearing below which would support an intention by the testators to make the wills irrevocable. In fact, defendant testified there were no discussions between Otto Handke and her about not being able to cancel or revoke the wills. The mere existence of children from prior marriages of Miriam and Otto along with the existence of mutual wills executed on the same day by the testators is insufficient under the evidence to prove an agreement that the wills were irrevocable. In sum, there is absolutely

nothing under all the evidence to indicate there was an agreement that either of the parties would not at any time have the right of revocation. See *Frese v. Meyer* (1945), 392 Ill. 59, 65, 63 N.E.2d 768.

The court below found for defendant at the close of the plaintiffs' case. The standard for the trial court in ruling on the motion for a finding at the close of plaintiffs' case in a nonjury case is set forth in section 2—1110 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—1110), formerly section 64(3) of the Civil Practice Act (Ill. Rev. Stat. 1981, ch. 110, par. 64(3)), and the decision of the trial court should not be reversed unless it is contrary to the manifest weight of the evidence. (*Kokinis v. Kotrich* (1980), 81 Ill. 2d 151, 154, 407 N.E.2d 43.) The trial court was correct in finding for defendant for the reasons stated above. See *Campbell v. Cowden* (1974), 18 Ill. App. 3d 500, 309 N.E.2d 601.

■ Plaintiffs also make the novel contention on appeal that the trial court "improperly forced plaintiffs to incur expenses of trial after plaintiffs stipulated that their evidence at trial would not go beyond that already presented in support of an unsuccessful motion for summary judgment." They contend that a sanction of $450 against them for failing to be ready for an October 10, 1981, trial, and requiring a continuance if they wanted a trial, was improper since they subsequently were willing to have judgment rendered against them based upon the facts previously submitted on their motion for summary judgment which had been denied. On appeal plaintiffs do not contest the propriety of the initial denial of their motion for continuance or the reasonableness of the amount of $450 as a sanction.

It suffices to hold only that plaintiffs' later willingness, without defendant's consent, to have judgment entered against them without trial on the basis of the pleadings and affidavit submitted on their motion for summary judgment is not a procedure provided for in the Code of Civil Procedure. The effect of such a procedure would be for a party to obtain summary judgment in favor of an opponent, over objection, without a trial on the merits. Section 2—1005(c) of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—1005(c)), formerly section 57(3) of the Civil Practice Act (Ill. Rev. Stat. 1981, ch. 110, par. 57(3)), provides that a judgment may be rendered "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the *moving party is entitled to a judgment* as a matter of law." (Emphasis added.) Defendant was entitled to a trial on the merits, and plaintiffs' attempted "short cut" of the trial procedures provided for in the Code of Civil Procedure was properly rejected, ul-

timately, by the trial court.

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

UNVERZAGT and LINDBERG, JJ., concur.