THERESE FELSON *et al.*, Plaintiffs-Appellants, v. LIDIA SCARPELLI *et al.*, Defendants-Appellees.

First District (4th Division)   No. 87—0615

Opinion filed December 31, 1987.—Rehearing denied February 10, 1988.

McMORROW, P.J., specially concurring in part and dissenting in part.

S. Paul Zelznick, of Chicago, for appellants.

Connolly & Ekl, P.C., of Clarendon Hills, for appellees.

.

JUSTICE JIGANTI delivered the opinion of the court:

The plaintiffs are the children of Anthony Scarpelli, the decedent. They allege that they acquired certain rights as a result of an oral agreement between Anthony Scarpelli and his wife, Lidia Scarpelli, one of the defendants, to make irrevocable, mutual and reciprocal wills. Although Lidia Scarpelli did not revoke her will, the plaintiffs allege that their rights were defeated when Lidia disposed of the property which they were to receive under the will. As a separate count, the plaintiffs further contend that Lidia Scarpelli, alone or in conspiracy with the other defendants, tortiously and intentionally interfered with their expectancy. The trial court dismissed the complaint and this appeal follows.

The complaint alleges that Anthony and Lidia were married in 1961. Both had children from previous marriages but no children were born to them during their marriage. Anthony died in 1984 leaving a substantial estate which was the result of his investments made before and during his marriage to Lidia. Lidia's financial contribution to the marriage was minimal.

The complaint further alleges that Anthony and Lidia agreed that the assets of their marriage would be treated as a common pool for their benefit and their children's benefit. They agreed that when one of them died the other should use the assets of the common pool to continue living the type of lifestyle to which they were accustomed and that the rest of the common pool of assets would ultimately go to the children when the surviving spouse died. Anthony and Lidia both agreed that they would do nothing to defeat or frustrate this agreement. In furtherance of their agreement, Anthony and Lidia executed mutual and reciprocal wills on the same day and before the same witnesses. Their wills are substantially identical in terms: each leaves virtually all of the testator's property to the survivor, and the remainder to the three children of Anthony and the daughter of Lidia to be divided equally. Immediately following Anthony's death, Lidia allegedly violated the oral agreement by transferring substantially all of the assets of the common pool to some or all of the defendants either in joint tenancy or as gifts. The defendants include Lidia's daughter, Lidia's son-in-law, and Lidia's grandson and his wife.

Mutual and reciprocal wills are the separate instruments of two or more persons, the terms of such wills being reciprocal, by which each testator makes a testamentary disposition in favor of the other. (*Frese v. Meyer* (1945), 392 Ill. 59, 63, 63 N.E.2d 768, 770.) Mutual and reciprocal wills may or may not be revocable at the pleasure of either party, depending on the circumstances and understanding

upon which they were executed. (*Martin v. Helms* (1925), 319 Ill. 281, 284, 149 N.E. 770, 772.) If the circumstances establish that the mutual and reciprocal wills were executed pursuant to a contract, then the wills become irrevocable upon the death of one of the testators. (*Martin v. Helms* (1925), 319 Ill. 281, 285, 149 N.E. 770, 772.) The revocation of an irrevocable, mutual and reciprocal will gives those entitled to take under the will a cause of action against the survivor. See *Monninger v. Koob* (1950), 405 Ill. 417, 91 N.E.2d 411; *Proctor v. Handke* (1983), 116 Ill. App. 3d 742, 452 N.E.2d 742.

■ The mere existence of mutual and reciprocal wills does not lead to a presumption of a contract. (*Proctor v. Handke* (1983), 116 Ill. App. 3d 742, 746-47, 452 N.E.2d 742, 746.) Clear and convincing evidence is required to establish that irrevocable, mutual and reciprocal wills were executed as a result of a binding contract. (*Frese v. Meyer* (1945), 392 Ill. 59, 64, 63 N.E.2d 768, 770.) To determine whether such clear and convincing evidence exists, it is necessary to look at the wills themselves, as well as evidence outside the wills. *Monninger v. Koob* (1950), 405 Ill. 417, 422, 91 N.E.2d 411, 414.

The defendants argue that because the factual situations are similar we should reach the same conclusion as the court did in *Monninger v. Koob* (1950), 405 Ill. 417, 91 N.E.2d 411, which held that the evidence was not of a clear and convincing nature to establish an agreement between a husband and wife to make irrevocable, mutual and reciprocal wills.

In *Monninger*, testimony was presented to the master in chancery regarding the circumstances surrounding the execution of mutual and reciprocal wills. In concluding that the evidence did not establish an agreement to make irrevocable, mutual and reciprocal wills, the Illinois Supreme Court considered several facts significant. First, there was no language in the wills from which a contract could be inferred, nor did the wills refer to each other. Second, the only testimony given was by interested persons about what people who were deceased at the time of the hearing said. Third, the husband and wife refused to enter into a written agreement. Fourth, the evidence showed that both husband and wife knew they could make new wills at any time.

We believe that the facts in *Monninger* can be distinguished from the instant case. Initially, it should be noted that the wills here are in fact mutual and reciprocal. Although the existence of a binding contract between Lidia and Anthony is not specifically expressed in the wills, nor do either of the wills contain any reference to each other, the complaint pleads facts outside the wills which may be considered in determining whether there is a contract to make the wills irrevocable.

The complaint states that Anthony and Lidia agreed to treat all assets of the marriage as a common pool. They agreed that the survivor of them would live the lifestyle to which they were accustomed and that the remainder of the common pool would go to the children in equal shares. They agreed that they would do nothing to defeat the ultimate distribution of the remaining pool of assets. Finally, they agreed that their mutual and reciprocal wills embraced their oral agreement.

■ After receiving evidence which came only from interested witnesses, the *Monninger* court found on balance that the decedents' refusal to enter a written agreement in addition to their knowledge that they could make new wills militated against a finding that there was clear and convincing evidence of a contract. In contrast, in this case, the allegations are most specific that there was in fact an oral contract and, because this case comes to us at the pleading stage, there is no countervailing evidence. The dismissal of this count of the complaint must be reversed.

■ The other count alleges that defendant Lidia Scarpelli, alone or in conspiracy with other defendants, tortiously and intentionally interfered with the plaintiffs' expectancy. To plead a cause of action for tortious interference with an expectancy to inherit, a complaint must allege: (1) the existence of the expectancy; (2) the defendant's intentional interference with the expectancy; (3) that the interference involved conduct tortious in itself such as fraud, duress or undue influence; (4) a reasonable certainty that the devise to the plaintiff would have been received but for the defendant's interference; and (5) damages. *Nemeth v. Banhalmi* (1981), 99 Ill. App. 3d 493, 499, 425 N.E.2d 1187, 1191.

The defendants argue that the plaintiffs' second count was properly dismissed because it fails to allege facts necessary to satisfy the third element for stating a claim for tortious interference—that the interference involved conduct which was tortious in. and of itself. The plaintiffs counter that they have alleged sufficient facts to plead that the defendants' conduct was fraudulent.

The plaintiffs allege that Lidia Scarpelli alone or in conspiracy with certain defendants fraudulently transferred or caused to be transferred the assets of the common pool immediately after the death of Anthony. The plaintiffs further allege that the defendants deceived the plaintiffs by representing that the will had not been revoked, being fully aware that the transfer of assets immediately after Anthony's death would defeat the plaintiffs' expectancy.

■ Statements by way of general conclusions of fraud are not suf-

ficient in a pleading. (*Carroll v. Caldwell* (1957), 12 Ill. 2d 487, 494, 147 N.E.2d 69, 73.) Fraud must be pleaded with specificity, particularity, and certainty. The pleadings must contain specific allegations of facts from which fraud is the necessary and probable inference. (*Wolford v. Household Finance Corp.* (1982), 105 Ill. App. 3d 1102, 1104-05, 435 N.E.2d 528, 530.) The plaintiff must allege that the defendant made a false representation of a material fact knowing or believing it to be false, that the defendant made the representation for the purpose of inducing the plaintiff to act, and that the plaintiff reasonably believed in and relied on the statement to his detriment. *Glazewski v. Coronet Insurance Co.* (1985), 108 Ill. 2d 243, 249, 483 N.E.2d 1263, 1266.

■ Applying the above rules to the instant case, we do not believe that the plaintiffs have alleged facts necessary to show that the defendants' conduct was fraudulent. The complaint states nothing more than that the transfer of assets was fraudulent and that the representation that the will had not been revoked was fraudulent. There is nothing in the complaint which states that anything the defendants said or did was intended to induce the plaintiffs to act. There is nothing in the complaint which states that the plaintiffs relied on anything the defendants said or did. Although the plaintiffs allege that they have been damaged, there is nothing in the complaint which states how the defendants' alleged tortious conduct caused the damage. In sum, the plaintiffs' allegations are vague and conclusory and fail to meet the strict pleading requirements to show that the conduct of the defendants was fraudulent.

For the foregoing reasons, we believe the trial court did not err in dismissing the second count of the plaintiffs' complaint.

Accordingly, the judgment of the circuit court is reversed as to the first count and affirmed as to the second count.

Reversed in part; affirmed in part.

LINN, J., concurs.

PRESIDING JUSTICE McMORROW, dissenting in part and specially concurring in part:

I respectfully dissent from the majority's conclusion that count I is sufficient to state a claim that Lidia has breached an oral agreement she allegedly made with Anthony to execute mutual and reciprocal wills. Anthony's children allege the legal conclusion that Anthony and Lidia entered into an oral agreement to execute mutual and reciprocal

wills. They include allegations regarding the terms of this alleged oral agreement. However, Anthony's children do not allege any specific facts from which the entry into or existence of an oral contract may be ascertained. Because of this lack of specific factual allegation to support the pleaders' legal conclusion that Anthony and Lidia entered into such an oral agreement, count I is insufficient to state a cause of action for breach of an oral agreement to make mutual and reciprocal wills and was properly dismissed by the trial court.

I agree with the majority's conclusion that count II of the complaint is insufficient to state a claim for tortious interference with an expectancy interest. However, I disagree with the majority's reasons for this conclusion, and specially concur in the majority's affirmance of the trial court's dismissal of count II alleging tortious interference with an expectancy interest.

## I

Anthony Scarpelli and his second wife, Lidia, executed separate wills whereby the entire estate of each spouse was left to the other spouse. In the event that one of the spouses predeceased the other, the estate, after two special bequests, was to pass equally to all of the spouses' children from their previous marriages. During the marriage, the spouses held some of their funds in accounts at a bank in Chicago. Of these accounts, four were held in joint tenancy between Anthony and Lidia. Nine other accounts were held in revocable trusts wherein Anthony and Lidia were co-trustees. One of these trust accounts named no beneficiaries and was closed while Anthony was alive. The remaining eight revocable trust accounts specified as beneficiaries the children of both Anthony and Lidia from their first marriages. Anthony died after 23 years of marriage to Lidia. Within a week of Anthony's death, all of the accounts at the Chicago bank were closed. Anthony's will was duly filed in the circuit court of Cook County without probate. Approximately one week after the will was filed, Anthony's children were informed by the Chicago bank, pursuant to their inquiry, that the accounts held by Anthony and Lidia at the bank had been closed as specified above.

Approximately 2½ years after these events, Anthony's children filed this action against Lidia, Lidia's daughter and son-in-law, and Lidia's granddaughter and grandson-in-law (hereinafter collectively Lidia's children). Anthony's children now allege that they *believe* that Anthony and Lidia orally agreed to execute each spouse's will in exchange for the other spouse's will. They allege that they believe that Lidia has transferred in joint tenancy or gifted to Lidia's children "all

or substantially all" of the estate of Anthony and Lidia. They assert that by these transfers or gifts, Lidia has violated her oral agreement with Anthony and tortiously interfered with their expectancy interest. Initially, the trial court dismissed the complaint with leave to amend, on the ground that the complaint failed to allege sufficient facts to indicate the existence of an oral agreement between Anthony and Lidia. Following amendment, the trial court dismissed the complaint with prejudice, finding it insufficient to demonstrate the existence of the alleged oral agreement. Anthony's children appeal.

## II

Upon review, the majority concludes that the complaint is sufficient to state a claim that Lidia breached an oral agreement with Anthony to make mutual and reciprocal wills. I cannot concur in this conclusion.

Anthony's children argue that Anthony and Lidia orally agreed that each of their wills was executed in exchange for the other's will, such that once Lidia took under Anthony's will, she could not later revoke her own will. In order to show that Anthony and Lidia entered into such an oral agreement with respect to their wills, Anthony's children must allege specific facts to demonstrate the existence of the oral agreement itself; if they allege no more than the legal conclusion that such an agreement was entered into, their complaint is factually insufficient to state a claim. (See Ill. Rev. Stat. 1985, ch. 110, par. 2—615; *In re Beatty* (1987), 118 Ill. 2d 489, 499; *Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407, 426, 430 N.E.2d 976.) Also, factual allegations to establish the existence of this oral contract generally may not derive exclusively from the mere circumstance that the spouses' wills are mutual and reciprocal. As the court observed in *Proctor v. Handke,* "Mutual wills, however, are not, generally, of themselves sufficient evidence of a contract, and the consideration to support it must be *aliunde* the wills. (*Monninger v. Koob* (1950), 405 Ill. 417, 422, 91 N.E.2d 411; *Frese v. Meyer* (1945), 392 Ill. 59, 64, 63 N.E.2d 768.) The mere existence of mutual wills does not lead to a presumption of contract nor is it evidence that such a contract does, in fact, exist. (*Campbell v. Cowden* (1974), 18 Ill. App. 3d 500, 503, 309 N.E.2d 601.)" *Proctor v. Handke* (1983), 116 Ill. App. 3d 742, 746-47, 452 N.E.2d 742, 746; see generally 1 Page, Wills §11.1, at 554 (Bowe-Parker rev. ed. 1960).

There is nothing in the amended complaint of Anthony's children to indicate the existence of the alleged oral agreement. As the majority notes, "the existence of a binding contract between Lidia and

Anthony is not specifically expressed in the wills, nor do either of the wills contain any reference to each other." (165 Ill. App. 3d at 872.) In fact, both wills leave all of the decedent spouse's property "as and for [the surviving spouse's] property forever." The only matters alleged by Anthony's children to demonstrate the existence of the oral contract are the existence of the mutual and reciprocal wills and the circumstance that they were executed by two spouses. These facts do not establish the existence of an oral *contract* between the two spouses to make irrevocable mutual and reciprocal wills. Consequently, the amended complaint is factually insufficient to state a claim for which relief may be granted.

The majority finds persuasive that Anthony's children make detailed allegations regarding the terms of the alleged contract. I disagree. The alleged terms of the oral agreement cannot serve as substitute for specific factual allegations demonstrating the very entry into and existence of the alleged oral agreement. Also, contrary to the majority's reasoning, *Monninger v. Koob* (1950), 405 Ill. 417, 91 N.E.2d 411, demonstrates that count I of the amended complaint pleads insufficient facts to state a cause of action. Notwithstanding the distinctions between *Monninger* and the instant case, *Monninger* supports the conclusion that Anthony's children plead nothing which, if proved, would permit the inference that Anthony and Lidia agreed to make mutual and reciprocal wills.

In *Monninger*, the plaintiffs presented testimony tending to show that the testators-spouses entered into an oral agreement to make mutual and reciprocal wills. As the majority notes, this testimony was provided "by interested persons about what people who were deceased at the time of the hearing *said*." (Emphasis added.) (165 Ill. App. 3d at 872.) The evidence in *Monninger* also indicated that "both husband and wife knew they could make new wills at any time." 165 Ill. App. 3d at 872.

In this case, Anthony's children fail to allege anywhere in their complaint that Anthony and Lidia ever said or wrote anything to any of their children, or anyone else, about an oral agreement to make mutual and reciprocal wills. Anthony's children also fail to allege specific facts to show that Anthony or Lidia believed they could not revoke their wills after one of the spouses had died. Without such specific factual allegation, Anthony's children have not established that Anthony and Lidia entered into an oral agreement. The circumstance that *Monninger* was an appeal from a judgment entered upon full evidentiary hearing, while this case comes before us on the pleadings, does not dictate the conclusion that the complaint at issue here is factually suffi-

cient to state a claim.

The trial court provided Anthony's children an opportunity to amend their complaint in order to plead sufficient facts to state a claim for breach of an oral agreement between Anthony and Lidia to make mutual and reciprocal wills, but they failed to remedy the deficiencies in their pleadings. Under these circumstances, the trial court properly exercised its discretion when it dismissed the amended complaint with prejudice. I would affirm.

### III

In count II of their complaint, Anthony's children allege that Lidia and her children have tortiously interfered with their expectancy interests. Anthony's children argue that they have an expectancy interest in the marital estate by virtue of the oral agreement between Anthony and Lidia to make mutual and reciprocal wills. As stated above, the complaint is factually insufficient to establish that Anthony and Lidia entered into an oral agreement to execute mutual and reciprocal wills. Consequently, count II is insufficient to state a claim for tortious interference with an expectancy interest which is premised on Anthony and Lidia's entry into an oral agreement to make mutual and reciprocal wills.

Anthony's children also maintain that by setting up the revocable trust agreements at the Chicago bank and naming the children as beneficiaries, Anthony affirmatively took steps to provide an expectancy interest for all of the children from the spouses' first marriages. They assert that Lidia tortiously interfered with this expectancy interest when she closed those accounts. However, the complaint of Anthony's children acknowledges that the trust accounts were revocable. Anthony's children do not argue or allege that the accounts were to become irrevocable upon the death of one of the spouses, or that revocation required the consent of the beneficiaries of the trust. Anthony's children do not allege that the trust accounts were not revocable without restriction by Lidia. (Cf. Northern Trust Co. v. Tarre (1981), 86 Ill. 2d 441, 427 N.E.2d 1217; Williams v. Springfield Marine Bank (1985), 131 Ill. App. 3d 417, 475 N.E.2d 1122.) Under these circumstances, count II of the amended complaint was properly dismissed for failure to state a claim. For these reasons, I specially concur in the majority's affirmance of the trial court's dismissal of count II of the complaint.

I would affirm the trial court's dismissal of both counts I and II of the amended complaint of Anthony's children.